UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                    Case No. 8:24-cr-00564-KKM-TGW

DANIEL LIBURDI, JOSEPH
SCOTTO, GREGORY WALKER,
and FRANK CARBONE, III,

    Defendants.
_____/

## ORDER

Defendant Daniel Liburdi moves to quash Grand Jury Subpoena No. 2022R01686-167 (the "Subpoena"), or for a protective order preventing disclosure of certain information requested in the Subpoena. The motion is denied.

**I. Background**

On December 18, 2024, a grand jury returned an indictment against Daniel Liburdi and others, with conspiracy to commit bank fraud, bank fraud, conspiracy to launder money, and money laundering. Doc. 1. The indictment alleges that the defendants worked together to create and control shell companies in other people's names and used the shell companies to fraudulently open merchant bank accounts to collect funds related to

fraudulent purchases. *Id.*, ¶ 29. The indictment also alleges that the defendants thereafter laundered the proceeds of the fraud. *Id.*, ¶ 40.

Liburdi was arrested on or around January 10, 2025. Doc. 23. On January 15, 2025, the Subpoena was issued to Goldhawk Financial, LLC ("Goldhawk"), a certified public accounting firm, seeking information and records relating to Liburdi and to thirteen business entities (the "Entities") alleged to be the shell companies. Doc. 127-1. Goldhawk, which prepared and filed tax returns for Liburdi and the Entities, has not yet complied with the Subpoena.

This Court has already rejected two attempts to quash the Subpoena.

a. Carbone's Attempt to Quash

On May 15, Liburdi's co-defendant, Frank Carbone, moved to quash the Subpoena. Doc. 83 Carbone argued that he had standing to challenge the Subpoena, although it was not issued to him, both because it sought evidence against him, and because it sought documents relating to Swipe Wyre, a company associated with Carbone. *Id.*, pp. 8-9. Carbone argued that the Subpoena sought evidence relating to the already-pending charges and therefore was an improper use of the grand jury's subpoena power. *Id.*, p. 8.

The United States challenged Carbone's standing to contest the subpoena (Doc. 86, pp. 7-8) and further argued that the Subpoena was properly issued as part of an investigation into tax crimes not yet indicted Doc. 86, pp.

2

8-9. With the Court's permission (*see* Doc. 100, p. 2), the United States submitted a sealed ex parte memo describing the basis for the separate tax investigation. Doc. 93-1 (sealed).

United States Magistrate Judge Thomas G. Wilson held a hearing on Carbone's motion. Doc. 90. Judge Wilson concluded that, while Carbone did have standing to challenge the subpoena (Doc. 100, p. 1 n *), his argument to quash it lacked merit (*id.*, p. 2). Judge Wilson found, based in part on a review of the United States' ex parte memorandum, that "the purpose of the subpoenas is to further the grand jury investigation into charges distinct from those in the indictment." Doc. 100, p. 2. Accordingly, he denied Carbone's motion to quash. *Id.*, p. 3.

Carbone objected to the decision. Doc. 114. United States District Judge Katheryn Kimball Mizelle overruled the objection.[1] Doc. 125. She explained that Judge Wilson had not clearly erred in denying the motion because the United States had demonstrated that the subpoena sought information relating to uncharged conduct, and a grand jury "can be used to investigate whether a defendant committed crimes not covered in the indictment." *Id.*, pp. 4-5 (quoting *United States v. US Infrastructure, Inc.*, 576 F.3d 1195, 1214 (11th

---

[1] The United States did not object to Judge Wilson's ruling on Carbone's standing, and Judge Mizelle did not, therefore, address that issue. Doc. 125, p. 2, n. 1.

3

Cir. 2009)).

   b. <u>Entities' Motion to Quash</u>

Separately, twelve of the Entities[2] identified in the Subpoena moved to quash it, primarily on Fifth Amendment grounds.[3] Doc. 89. The Entities argued that the Supreme Court's holding in *Citizen's United v. Federal Election Commission*, that corporations have First Amendment rights, should be applied to vest corporations and LLCs with Fifth Amendment rights. *Id.*, pp. 2-3. The Entities asserted that they, as LLCs, enjoyed a Fifth Amendment privilege against self-incrimination that allowed them to quash a subpoena issued to a third party seeking documents that could incriminate them. *Id.*, pp. 1-3.

Judge Wilson denied the Entities' motion. Doc. 104. He explained that no federal court had recognized an LLC's Fifth Amendment privilege against

---

[2] XMY Enterprize LLC, Green Brick Media LLC, GGM Group Family Office LLC, Pompea Mountain TR, GGM Group LLC, Poseidon Yacht Charters LLC, Merchant Corner LLC, Time Management Plus LLC, Merchent Manager Limited LLC, Endless Viewz LLC, Power Play Media LLC, and Coast Capital Investments Group.

[3] The Entities also briefly advanced an argument that the Subpoena is "vague and overbroad," and attempted to incorporate by reference Carbone's arguments that the subpoena was improperly used to gather evidence of indicted crimes. Doc. 89, p. 3. However, in their reply to the government's response, the Entities conceded that they could not incorporate Carbone's arguments by reference under the local rules, conceded that the Subpoena was not vague, and asserted only that the Subpoena was overbroad because it lacked a time restriction. Doc. 101, p. 7.

self-incrimination and that he was unpersuaded by the Entities' arguments that he should do so. *Id.*, p. 2.

The Entities appealed the ruling. Doc. 105. Judge Mizelle affirmed Judge Wilson's order. Doc. 115. First, Judge Mizelle explained that Supreme Court and Eleventh Circuit precedent already established that "artificial entities do not have a Fifth Amendment privilege against self-incrimination." *Id.*, p. 2. Second, Judge Mizelle noted that the Entities presented no argument as to why *Citizens United*'s First Amendment ruling "undermines settled Fifth Amendment law." *Id.*, pp. 2-3. Finally, Judge Mizelle explained that, even if the Entities had a Fifth Amendment privilege, the Subpoena would not infringe on it, because the documents it sought were not in the Entities' possession and the Subpoena did not require the Entities to say or produce anything. *Id.*, pp. 3-4. The Entities have now appealed the decision to the Eleventh Circuit. Doc. 117.

### II. The Motion

Following the failure of Carbone's and the Entities' motions to quash the Subpoena, Liburdi filed the present motion. Doc. 116. The Government responded (Doc 120), Liburdi replied (Doc. 127), and the Court held a hearing to consider the issue (*see* Doc. 134).

First, Liburdi argues that he has standing to challenge the Subpoena because his "privilege . . . or personal interest in the subpoenaed matter" gives

5

him standing to challenge production of the documents.[4] Doc. 116, p. 4. Liburdi asserts three privileges: his Fifth Amendment privilege, Florida's accountant-client privilege, and the privilege afforded between taxpayers and federally authorized tax practitioners pursuant to IRC § 7525.

As to the substance of the Subpoena, Liburdi argues that: (1) his assertion of privilege prevents the production of the documents; (2) the United States' request for all of the documents in Goldhawk's possession relating to Liburdi is an "unreasonable and oppressive" demand for production; and (3) the United States is using the subpoena "solely or primarily" to collect evidence against Liburdi for the crimes already charged, which is an improper purpose. *Id.*, pp. 13-19.

**III. Law and Analysis**

a. <u>Standing</u>

To challenge a subpoena issued to a third party, a movant must allege a "personal right or privilege with respect to the materials subpoenaed." *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979); *see also Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005) ("[S]tanding exists if the party alleges a 'personal right or privilege' with respect to the

---

[4] At the October 27 hearing on the motion, Liburdi's counsel conceded that Liburdi's standing to challenge the Subpoena is "limited just to the documents that [Liburdi] provided" to Goldhawk. Doc. 135 (audio recording), at 05:00-05:18.

6

subpoenas.") (quoting *Brown*, 595 F.2d at 967).

Judge Wilson has ruled that a defendant in this case (in that instance, Carbone), who asserts a Fifth Amendment privilege relating to the documents sought by the Subpoena has standing to challenge the Subpoena. Doc. 100, p. 1 n *; *see also* Doc. 91 (sealed audio recording), at 18:36 ("forget standing, they [Defendants] have enough standing . . .").

Liburdi, who is expressly named in the Subpoena, arguably has a stronger standing argument than did Carbone. Thus, the issue of standing as it applies here has been decided. *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1291 (11th Cir. 2005) (per curiam) ("Under the law-of-the-case doctrine, the resolution of an issue decided at one stage of a case is binding at later stages of the same case. . . The doctrine operates to preclude courts from revisiting issues that were decided explicitly or by necessary implication in a prior appeal.") (cleaned up).

Even had Judge Wilson not decided the issue, however, courts have sometimes assumed without deciding that a movant has standing to challenge a subpoena to a third party based on his allegation of privilege, even when a court denies the motion to quash because no privilege actually existed. *See, e.g. In re Grand Jury Subpoena*, 2 F.4th 1339 (11th Cir. 2021) (upholding a district court's denial of a grand jury target's motion to quash a subpoena directed at the target's attorney; agreeing that the crime-fraud exception to attorney-

7

client privilege applied without commenting on the target's standing to challenge the subpoena which was not directed at them); *Couch v. United States*, 409 U.S. 322(1973) (rejecting a taxpayer's Fifth Amendment objection to an IRS summons served on her accountant without commenting on the taxpayer's standing to bring the challenge).

Assuming Liburdi has standing to challenge the Subpoena the Court turns to the merits of his argument, and finds them unavailing.

b. Merits

A court may quash a subpoena "if compliance would be unreasonable or oppressive." FED. R. CRIM. P. 17(c)(2). "[A] grand jury subpoena issued through normal channels is presumed to be reasonable, and the burden of showing unreasonableness must be on the recipient who seeks to avoid compliance." *U.S. v. R. Enterprises, Inc.*, 498 U.S. 292, 301, 11 S.Ct. 722, 728, 112 L.Ed.2d 795 (1991). Although the party moving to quash a grand jury subpoena must overcome a presumption of reasonableness, grounds for quashing may exist, including the movant's constitutional rights, impingement on a common law privilege, or unfair financial or logistical burdens. *See id.* at 305 (Stevens, J., concurring) (observing that objections to a grand jury subpoena "might be made in various ways," including showing unreasonable burden, intrusion on privacy interests or privileges, or First Amendment violations); *United States v. Roberts*, 852 F.2d 671, 676 (2d Cir. 1988), *cert. denied*, 488 U.S. 993, 109 S.

8

Ct. 556, 102 L. Ed. 2d 583 ("A subpoena can be invalid for a variety of reasons, as when it is unduly burdensome, when it violates the right against self-incrimination, or when it calls for privileged documents.") (citations omitted).

    i.    Privilege

Liburdi argues that the Subpoena should be quashed because Goldhawk's the responsive documents contain material protected by Liburdi's Fifth Amendment privilege, accountant-client privilege, and tax-preparer-client privilege. These arguments lack merit.

    1. Fifth Amendment

Liburdi first suggests that the Subpoena seeks material that infringes on his Fifth Amendment right against self-incrimination. The Fifth Amendment provides that, "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. "[T]he ordinary rule is that the [Fifth Amendment] privilege is available to witnesses called before grand juries." *Lefkowitz v. Turley*, 414 U.S. 70, 78, 94 S. Ct. 316, 322, 38 L. Ed. 2d 274 (1973). However, "the privilege protects a person only against being incriminated by his own compelled testimonial communications." *Fisher v. United States*, 425 U.S. 391, 409, 96 S. Ct. 1569, 1580, 48 L. Ed. 2d 39 (1976). Thus, "[a] party is privileged from producing evidence but not from its production." *Id.* at 399 (quoting *Johnson v. United States*, 228 U.S. 457, 458, 33 S. Ct. 572, 572, 57 L. Ed. 919 (1913)).

As the District Judge has already explained, "[b]inding precedent establishes that a person has no Fifth Amendment privilege to object to a subpoena requiring a third party to produce an incriminating document absent some compulsion acting on the person asserting the privilege." Doc. 115, p. 3; *see also United States v. Hubbell*, 530 U.S. 27, 35-36, 120 S. Ct. 2037, 2043, 147 L. Ed. 2d 24 (2000) ("[A] person may be required to produce specific documents even though they contain incriminating assertions of fact or belief because the *creation* of those documents was not 'compelled' within the meaning of the privilege.") (emphasis added). Liburdi demonstrates no such compulsion.

In *Fisher v. United States*, the Supreme Court held that the production of an accountant's workpapers did not implicate a taxpayer's Fifth Amendment privilege against self-incrimination. 425 U.S. at 396. The *Fisher* court reasoned that because the workpapers were created voluntarily, they did not themselves contain compelled testimony, and further that their production, even if the taxpayer himself had been forced to produce them, would not be self-incriminating because "the existence and location of the papers are a foregone conclusion." *Id.* at 409-11.

However, Liburdi asserts that language in *Fisher* urges the opposite result here. Doc. 116, p. 11. Fisher seizes on the statement: "When the client himself would be privileged from production of the document, either as a party at common law or as exempt from self-incrimination, the attorney having

10

possession of the document is not bound to produce." 425 U.S. at 404; Motion, Doc. 116, p. 11; Reply, Doc. 127, p. 1. However, that assertion rested on a separate concept, which the next paragraph made clear. The Supreme Court explained, "…the papers, if unobtainable by summons from the client, are unobtainable by summons directed to the attorney *by reason of the attorney-client privilege*." *Id.* at 405 (emphasis added).

Like *Fisher*, *Couch v. United States*, 409 U.S. 322, counsels denial of Liburdi's motion. The Supreme Court in *Couch* held that a court could enforce an IRS summons to an accountant for business records given to him by a taxpayer, over the taxpayer's objection that the production would violate the taxpayer's Fifth Amendment privilege against self-incrimination. 409 U.S. at 328-29. The Court held that the accountant, "not the taxpayer, is the only one compelled to do anything," and since the accountant himself did not claim production would expose the accountant to prosecution, "coercion against a potentially accused person . . . to utter self-condemning words or produce incriminating documents is absent." *Id.* at 329.

*Couch* also directly forecloses Liburdi's claims that his Fifth Amendment rights are infringed because the documents subpoenaed belong to him (s*ee* Doc. 116, p. 7 ("These are his [Liburdi's] documents, records, and emails")). The Supreme Court explained in *Couch* that the taxpayer's ownership of the documents did not change the absence of compelled incrimination when the

11

documents were sought from a third party: "To tie the privilege against self-incrimination to a concept of ownership would be to draw a meaningless line." 409 U.S. at 331.

In sum, the subpoena does not violate Liburdi's Fifth Amendment right against self-incrimination.

### 2. Accountant-Client Privilege

Liburdi next argues that production of the documents would violate his accountant-client privilege. Doc. 116, p. 4. He acknowledges that an accountant-client privilege is not recognized under federal law, but nonetheless encourages this Court to create such a privilege based on policy considerations. *Id.*, p. 5. The Court declines the invitation.

The Eleventh Circuit has rejected the assertion of a federal accountant-client privilege. *See Matter of Newton*, 718 F.2d 1015, 1021 (11th Cir. 1983) ("Federal law, however, does not recognize an accountant-client privilege.") And the Supreme Court has explained that recognizing an accountant-client privilege within the context of a tax-related criminal investigation would be inappropriate. *See Couch*, 409 U.S. at 335 ("Nor is there justification for such a privilege where records relevant to income tax returns are involved in a criminal investigation or prosecution.") The Supreme Court reasoned that "there can be little expectation of privacy where records are handed to an accountant, knowing that mandatory disclosure of much of the information

12

therein is required in an income tax return." *Id.*

In short, the Subpoena does not violate Liburdi's accountant-client privilege, because he has none in this case.

### 3. Federal Tax-Preparer Privilege

Liburdi next asserts that the production of documents responsive to the Subpoena would violate the privilege afforded to communications between taxpayers and federally authorized tax practitioners. Doc. 116, p. 7. Liburdi cites Internal Revenue Code section 7525 to support his argument.

Section 7525 creates the "general rule" that "the same common law protections of confidentiality which apply to a communication between a taxpayer and an attorney shall also apply to a communication between a taxpayer and any federally authorized tax practitioner to the extent the communication would be considered a privileged communication if it were between a taxpayer and an attorney." 26 U.S.C.A. § 7525(a)(1). Omitted from Liburdi's motion, however, is the second prong of the statute, which states that the privilege described in § 7525(a)(1), "may only be asserted in – (A) any noncriminal tax matter before the Internal Revenue Service; and (B) any noncriminal tax proceeding in Federal court brought by or against the United States." 26 U.S.C.A. § 7525(a)(2).  In other words, the statute is facially inapplicable to criminal proceedings and does not apply here.

Section 7525 does not support Liburdi's argument.

13

Indeed, no privilege Liburdi asserts prohibits the production of documents responsive to the third-party Subpoena.

ii.   Burden

In addition to asserting privilege over the responsive documents, Liburdi argues that the Subpoena should be quashed as unduly burdensome.

In evaluating whether compliance with a grand jury subpoena would be "unreasonable or oppressive" under FED. R. CRIM. P. 17(c)(2), federal courts have considered whether the subpoena's demands for production are overbroad so as to unduly burden the subpoena's subject. *See R. Enters., Inc.,* 498 U.S. at 305 (Stevens, J., concurring in part and concurring in the judgment) ("The moving party has the initial task of demonstrating to the Court that he has some valid objection to compliance. . . Depending on the volume and location of the requested materials, the mere cost in terms of time, money, and effort of responding to a dragnet subpoena could satisfy the initial hurdle."); *Schwimmer v. United States*, 232 F.2d 855, 861 (8th Cir. 1956) (a subpoena "may be so onerous in its burden as to be out of proportion to the end sought.") However, "[a]s a necessary consequence of its investigatory function, the grand jury paints with a broad brush." *R. Enters., Inc.,* 498 U.S. at 297.

Liburdi claims that the Subpoena is overbroad in its demand for "All books, paper, records…" relating to Liburdi and the Entities. Doc. 116, p. 8. He argues that the request is, therefore, unduly burdensome. *Id.*

14

First, to the extent Liburdi has standing to challenge the Subpoena, it is limited to challenges based on his own "rights or privileges." *See Brown*, 595 S.2d at 967. Because the Subpoena places the burden to produce on Goldhawk, Liburdi lacks standing to challenge the Subpoena on the ground that compliance would be unduly burdensome.[5]

Second, even if the Court assumed Liburdi had standing to assert this argument, it not succeed, for several reasons. To start, at the motion hearing, Liburdi's counsel acknowledged that he had been able to collect and review the records responsive to the Subpoena. Doc. 135 (audio recording), at 34:20-34:35. This undercuts Liburdi's argument that it would be "unreasonable and oppressive, if not impossible, to make the required production." Doc. 116, p. 8.

Next, to prevail on such an objection, the movant must demonstrate that the request creates an *undue* burden. Given the nature of the allegations (including that the shell companies were fraudulent husk entities established for the purpose of committing fraud) and the charges being investigated, the Subpoena requests do not appear disproportionate to the needs of the United States' investigation.

---

[5] And, to the extent Liburdi suggests that he may object to the government's collection of evidence because voluminous evidence makes it burdensome to "review and evaluate the materials in an effort to prepare for trial" (Doc. 116, p. 8), he cites no legal authority suggesting the government is limited in the amount of relevant evidence it may collect and produce to prepare a criminal case.

Finally, the Court notes that any burden the Subpoena might impose is mitigated by the United States' representation that it is actively conferring with Goldhawk to negotiate the scope of its requests. Doc. 120, p. 14 ("[T]he United States has spoken with counsel for Goldhawk, and is prepared to work in good faith to address any concerns *the subpoenaed party* has regarding the scope of the subpoena, including a willingness to modify the scope of the subpoena.").

The Subpoena is not overbroad or unduly burdensome.

iii.  Improper Use of Grand Jury Subpoena Power

Liburdi's final argument to quash the Subpoena is that the Government "issued this post-indictment subpoena mainly to strengthen its evidence in the Bank Fraud or Money Laundering allegations in the pending indictment against Liburdi." Doc. 116, p. 17.

A grand jury and its subpoena power "cannot be used solely or even primarily to gather evidence against an indicted defendant." *United States v. US Infrastructure, Inc.*, 576 F.3d 1195, 1214 (11th Cir. 2009) (quotation omitted). However, when a defendant is suspected of committing more crimes than those for which he is already indicted, a grand jury retains its full power to investigate those other possible crimes. *Id.* Thus, "[a]lthough the government may not use a grand jury for discovery concerning a pending prosecution, it may continue an investigation from which information relevant

16

to a pending prosecution may be an incidental benefit." *United States v. Alred*, 144 F.3d 1405, 1413 (11th Cir. 1998) (quotation omitted).

The United States has filed an ex parte memorandum explaining its basis for issuing the Subpoena. Doc. 93-1 (sealed). The basis for the memorandum applies to Liburdi, not just Carbone. Doc. 135 (audio recording), at 41:18-41:30. The United States' "memorandum contains persuasive evidence that the [Subpoena] seek[s] information about conduct not charged in the indictment." Doc. 125, p, 4.[6]

The Court is satisfied that the Subpoena was issued for a permissible purpose.

### IV. Conclusion

For the reasons stated above, Liburdi's motion to quash the Subpoena is DENIED.

---

[6] To the extent Liburdi suggests that the timing of the Subpoena (i.e. its issuance after Liburdi's arrest) somehow demonstrates that the United States' motive must have been to gather evidence for the pending case, his argument does not persuade. The United States explains that Goldhawk's principal is Liburdi's cousin, and the United States worried that, if the cousin received the subpoena, he would alert Liburdi to the impending indictment. So, the United States waited to complete the tax investigation until it could effect Liburdi's arrest, and the seizure of his property, relating to the other charges. Doc. 120, p. 2; *see also* Doc. 135 (audio recording), at 25:13-25:43 (AUSA Duso explaining that "the timing of the subpoena" was "due to government concerns about the possibility that Mr. Liburdi would become aware of our investigation prior to his arrest because of that familial relationship," and the risk that Liburdi's awareness of either investigation would threaten the government's plan to seize Liburdi's assets upon arrest.)

ORDERED on November 14, 2025.

*Natalie Hirt Adams*
NATALIE HIRT ADAMS
United States Magistrate Judge

FOR THOMAS G. WILSON
United States Magistrate Judge

18