**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

UNITED STATES OF AMERICA,

v.                                                    Case No. 8:24-cr-564-KKM-TGW

DANIEL LIBURDI, JOSEPH SCOTTO,
GREGORY WALKER, and FRANK
CARBONE, III,

     Defendants.

_____

## <u>ORDER</u>

On March 6, 2024, a magistrate judge issued a warrant authorizing the search and seizure of records related to Defendant Daniel Liburdi's Skype account. Warrant (Doc. 140-1); Mot. (Doc. 140) at 3–4. Liburdi argues that the warrant and resulting search violated his Fourth Amendment rights because (1) the government lacked probable cause; (2) the warrant was overbroad; (3) the search was excessive; and (4) reliance on the warrant was unreasonable. *See* Mot. Liburdi moves to quash the warrant and to suppress "all evidence obtained" from the resulting search. *Id.* at 1, 25. The government opposes the motion, Resp. (Doc. 183), and Liburdi replies, (Doc. 213). After careful review, I deny Liburdi's motion. The government showed probable cause to secure the search warrant, and the warrant was not overbroad. But even if it were,

reliance was reasonable. Finally, Liburdi fails to show that the search itself was excessive.

## I.    BACKGROUND

### A. The Alleged Scheme

This case involves an alleged conspiracy to fraudulently obtain bank accounts and process high-risk credit card transactions. As alleged, Liburdi conspired to develop a scheme to engage in high-risk billing practices while minimizing the risks of engaging in those practices. Indictment (Doc. 1) ¶ 27. Co-defendants Joseph Scotto, Gregory Walker, and Frank Carbone, III, each joined, supported, and advanced that conspiracy. *Id.* ¶¶ 27–28.

To understand the government's investigation that led to the warrant, some background on card transactions proves useful. To process a card payment in the United States, a merchant must have a merchant account with an acquiring bank. *Id.* ¶ 23. Merchants whose transactions result in a lot of chargebacks, i.e., disputed charges that are reversed by the cardholder's bank, or other losses are considered "[h]igh-risk merchants." *Id.* ¶ 19. Being considered a "high-risk merchant" brings negative consequences, such as termination of bank accounts and referral to a list that makes it difficult to "obtain merchant processing services from other financial institutions in the future." *Id.* ¶ 22.

The grand jury alleges that, from about May 2018 to May 2023, the defendants sought to avoid the negative consequences of engaging in high-risk transactions "by fraudulently establishing merchant accounts for entities they controlled in the name of [independent business owners] IBOs . . . by false pretenses to Acquiring Banks." *Id.* ¶¶ 27, 28. As alleged in the indictment, the defendants recruited people (whom they called "independent business owners") to provide personal identifying information and then used that information to establish shell companies, through which they concealed their efforts to engage in high-risk billing practices. *See id.* ¶¶ 15, 27, 29(a)–(b).

The indictment also alleges two substantive counts of bank fraud. *See id.* ¶¶ 30–37; *see also* 18 U.S.C. § 1344. These counts allege that Liburdi made materially false representations to obtain merchant accounts. *See id.* ¶¶ 33, 37. Last, the defendants allegedly conspired to launder money obtained through their bank fraud to promote further fraud. *Id.* ¶¶ 38–40.

### B. The Warrant

Liburdi moves to quash the March 6, 2024 warrant to search and seize his Skype account. *See generally* Warrant. "Skype is an internet service that allows users to communicate with each other by voice, video, or instant messages." *Sartori v. Schrodt*, 424 F. Supp. 3d 1121, 1124 (N.D. Fla. 2019), *aff'd*, No. 19-15114, 2021 WL 6060975 (11th Cir. Dec. 20, 2021); *see also*

Warrant at 13. The warrant sought information related to the " 'Microsoft'[] account for the user associated with . . . Skype ID[]: live:37e809b52ee8e07d." *Id.* at 3–4.[1] The account was created in August 2016, Macy Aff. (Doc. 140-1) ¶ 26, and Liburdi admits that "[t]he targeted accounted was created by or for [him]." Mot. at 6.

The warrant, by way of incorporation of Attachment B, detailed what the government could require from Microsoft. *See* Warrant at 5–7.[2] This included user-generated information, such as messages (to or from the account), address books, calendar data, and, more broadly, "[a]ll records or other information stored by an individual using the account." *Id.* at 5–7. The warrant attachment also lists activity logs, log-in IP addresses, and metadata. *Id.* Deleted information was included if "still available to Microsoft." *Id.* at 5.

Second, the warrant limited the "Information to be Seized by the Government." *Id.* at 7–8. Any information seized had to "constitute[] fruits,

---

[1] Microsoft is a technology company with a broad array of products, including e-mail, cloud storage, and "Skype," a messaging and video-conference tool. Macy Aff. (Doc. 140-1) ¶¶ 8–9. Thus, a warrant to obtain data from a "Microsoft" account may be broader than one to obtain data from a "Skype" account. Under a broad reading, the warrant requires the former. But both parties operate from the understanding that the warrant "targeted [Liburdi's] Microsoft '*Skype*' account." *See, e.g.*, Mot. at 5 (emphasis added). Thus, I assume that the warrant's scope was the Skype account and related data.

[2] References to "Warrant" include the warrant and Attachments A and B, which it incorporates. (Doc. 140-1) at 2.

evidence, or instrumentalities of violations of 18 U.S.C. § 1344 (Bank Fraud) and 18 U.S.C. § 1956(h) (Conspiracy to Commit Money Laundering), committed by" Liburdi or his known or unknown co-conspirators. *Id.* at 7. The warrant limited items "from May 23, 2018 to [March 6, 2024]." *Id.*

### C. The Affidavit

To support the warrant application, IRS Special Agent Spencer Macy provided an affidavit in which he concluded that there was probable cause to believe that Liburdi participated in the bank fraud and money laundering schemes and that the objects of the warrant would yield "evidence and instrumentalities of these crimes." Macy Aff. ¶¶ 1, 4–5, 33, 37. Macy identified the government's main source of evidence as "Cooperator A," who pleaded guilty to involvement in the scheme. *See id.* ¶¶ 19, 28–29. Cooperator A identified Liburdi as a co-conspirator, and Skype conversations "between Cooperator A and the live:37e809b52ee8e07d account"—which agents determined belonged to Liburdi—confirmed Liburdi's involvement. *See, e.g.*, *id.* ¶¶ 28–33.

The affidavit excerpted these conversations, which took place between July 2017 and May 2022. *Id.* ¶¶ 29–32, 34. In one dated May 23, 2018, live:37e809b52ee8e07d (allegedly Liburdi) gave Cooperator A "advice on how to handle bank verification phone calls." *Id.* ¶ 31. Cooperator A asked if "you

5

let your IBO's do [the calls]?" *Id.* In response, live:37e809b52ee8e07d said that "gotta make sure you pick up so thet [sic] don't look for the signers other numbers . . . tell them not to pick up" "OR I guess you can train them" "but fk" "1 bad question and things going to go south real fast." *Id.*

Macy concluded, based on his training, experience, and the context of the investigation to that point, that Liburdi's "references to 'making sure you pick up [the phone]'" "relate[] to a portion of the Bank Fraud scheme whereupon [the participants] . . . intercept[ed] bank verification calls and provided false information to verify the fraudulent details provided in the applications for merchant processing services. These activities furthered the Bank Fraud scheme and showed Liburdi's knowledge of the scheme." *Id.* ¶ 33.

While this conversation occurred in 2018, the government had more recent evidence, including from at least 2022, *id.* ¶ 29, as well as conversations obtained from a June 5, 2023 search warrant. *Id.* ¶ 36.

In addition to describing the Skype calls, Macy detailed the kinds of information that Microsoft stores and how it would assist the investigation. According to Macy's training and experience, Microsoft maintains an array of data, including messages, email records, address books, and IP logs that help law enforcement identify users of a particular account. *See, e.g., id.* ¶¶ 10–16. And because "users . . . rarely use [Skype] to communicate with one person

6

alone," particularly in the context of "organized crime," it was likely that the Skype messages would identify more co-conspirators. *See id.* ¶ 15. Thus, in Macy's estimation, there was probable cause to believe that Microsoft had information responsive to the investigation.

The magistrate judge agreed and issued the warrant on March 6, 2024. Warrant at 2. After receiving the production from Microsoft, "agents reviewed the material to determine what fell within the scope of the warrant." Resp. at 16. Agents did not review every communication, but rather "relied on more limited search techniques to perform the review." *Id.* at 19.

On December 18, 2024, nine months after the warrant was issued, a federal grand jury indicted Liburdi and his co-defendants on charges of bank fraud (Counts 2 and 3), conspiracy to commit bank fraud (Count 1), and conspiracy to commit money laundering (Count 4).[3] Indictment ¶¶ 1–40. Liburdi moves to quash the warrant and suppress all its resulting evidence.

## II.   LEGAL STANDARDS

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. A warrant must be based on "probable cause, supported by Oath or affirmation, and particularly describing the place

---

[3] Count 2 for bank fraud was brought only against Liburdi and Carbone, and Count 3 for bank fraud was brought against Liburdi alone.

to be searched, and the persons or things to be seized." *Id.* "A Fourth Amendment violation can trigger the exclusionary rule, which requires courts to suppress illegally obtained evidence, but that rule has several exceptions." *United States v. Watkins*, 13 F.4th 1202, 1210 (11th Cir. 2021). The exclusionary rule functions as a last resort and is reserved "only [for] where its remedial objectives are thought most efficaciously served—that is, where its deterrence benefits outweigh its substantial social costs." *United States v. Delancy*, 502 F.3d 1297, 1314 (11th Cir. 2007) (quoting *Hudson v. Michigan*, 547 U.S. 586, 591 (2006)).

### A. Standing

Under *Katz v. United States*, 389 U.S. 347 (1967), and its progeny, "for Fourth Amendment protections to apply, the person invoking the protection must have an objectively reasonable expectation of privacy in the place searched or item seized." *Rehberg v. Paulk*, 611 F.3d 828, 842 (11th Cir. 2010), *aff'd on other grounds*, 566 U.S. 356 (2012). "To establish a reasonable expectation of privacy, the person must show (1) that he manifested 'a subjective expectation of privacy' in the item searched or seized, and (2) a willingness by society 'to recognize that expectation as legitimate.'" *Id.* (quoting *United States v. McKennon*, 814 F.2d 1539, 1543 (11th Cir. 1987) (per curiam)). Although not settled by the Eleventh Circuit, *id.* at 842–47, "private

8

electronic communications are generally protected by the Fourth Amendment, even when transmitted over third-party platforms," *United States v. Zelaya-Veliz*, 94 F.4th 321, 334 (4th Cir.) (collecting cases), *cert. denied*, 145 S. Ct. 571 (2024); *see United States v. Ambrose*, No. 23-CR-13-KKM-CPT, 2025 WL 3153495, at *4 (M.D. Fla. Nov. 12, 2025) (collecting cases); *cf. United States v. Gyetvay*, 149 F.4th 1213, 1230 (11th Cir. 2025) (applying the Fourth Amendment to a search of emails without addressing the question of standing).

### B. Probable Cause

A warrant may not issue unless there is probable cause, meaning "a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Trader*, 981 F.3d 961, 969 (11th Cir. 2020) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). To that end, a warrant that relies on stale information cannot provide probable cause that evidence will be found when the warrant issues. *See United States v. Lopez*, 649 F.3d 1222, 1246 (11th Cir. 2011). "The task of the issuing magistrate . . . is simply to make a practical, common-sense decision" based on "all the circumstances set forth in the affidavit." *United States v. Bradley*, 644 F.3d 1213, 1263 (11th Cir. 2011) (quoting *Gates,* 462 U.S. at 238). "[T]he affidavit is given a common sense and realistic interpretation." *United States v. Khanani*, 502 F.3d 1281, 1290 (11th Cir. 2007) (citation modified).

### C. Particularity

"The Fourth Amendment requires that 'those searches deemed necessary should be as limited as possible.' " *United States v. Blake*, 868 F.3d 960, 973 (11th Cir. 2017) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)). The goal is to prevent the type of "exploratory rummaging in a person's belongings" that "was permitted during the colonial era by the 'general warrant.' " *Id.* (citation modified). Thus, a warrant must describe the objects of seizure with particularity, though "elaborate specificity is unnecessary." *Bradley*, 644 F.3d at 1259 (citation modified). A warrant that "enables the searcher to reasonably ascertain and identify the things authorized to be seized" is "sufficiently particular." *Id.*

### D. Good Faith Exception

While the exclusionary rule "generally prohibits the government from relying on evidence obtained in violation of the Fourth Amendment," in practice it "applies in only 'unusual cases' " where "the threat of its application can deter future violations." *United States v. McCall*, 84 F.4th 1317, 1323 (quoting *United States v. Leon*, 468 U.S. 897, 918 (1984)). The Supreme Court fashioned the "good-faith exception," under which "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant" will "generally not be excluded." *Blake*, 868 F.3d at 974–75 (quoting *Leon*, 468

10

U.S. at 922). The good faith exception is particularly applicable "when officers act pursuant to a warrant." *McCall*, 84 F.4th at 1323. This is because, " '[i]n the ordinary case, an officer cannot be expected to question' a judge's decision that the requirements for a warrant have been satisfied or that the form of the warrant is sufficient." *Id.* (quoting *Leon*, 468 U.S. at 921).

### E. Warrant Execution

Even if a warrant is valid, suppression might be justified if the search exceeded the scope of the warrant. *See United States v. Moon*, 33 F.4th 1284, 1296–97 (11th Cir. 2022). But even when execution is excessive, invalidation is not "automatic[]," especially when the items not listed in the warrant are not admitted into evidence. *United States v. Schandl*, 947 F.2d 462, 465 (11th Cir. 1991). The question is one of practicality. A "search may be 'as extensive as reasonably required to locate the items described in the warrant.' " *Moon*, 33 F.4th at 1296 (quoting *United States v. Wuagneux*, 683 F.2d 1343, 1352 (11th Cir. 1982)). Courts give leeway when a crime is complex or it is hard to determine whether an item contains evidence. *See id.* at 1297; *see also Wuagneux* 683 F.2d at 1349. "Absent a flagrant disregard of the terms of the warrant, the seizure of items outside the scope of a warrant will not affect admissibility of items properly seized." *Khanani*, 502 F.3d at 1289 (citation modified).

11

## III.   ANALYSIS

Liburdi argues that I should suppress all evidence obtained from the warrant. He contends that the government lacked probable cause, and the warrant was facially overbroad. Moreover, even if the warrant were valid, Liburdi contends that the agents executed it without abiding by necessary protocols. Finally, he argues that the good faith exception does not apply because no reasonable agent could have relied upon the warrant. To begin, Liburdi's argument on probable cause fails. As for overbreadth, while the warrant did not explicitly narrow the time range of the materials produced, Liburdi did not create his account until 2016, near in time to chat logs related to the conspiracy that the government already had in-hand. As a result, the warrant was not overbroad. Even if it were, the good faith exception applies. Finally, Liburdi offers no evidence of improper execution by the agents, and his challenge is otherwise unripe. I discuss each in turn.

### A. Standing

The warrant permitted the government to search a wide variety of data, such as messages, files, IP addresses, and activity logs. *See* Warrant at 4–7. Liburdi asks the Court to suppress "all" of the evidence, regardless of category. *See* Mot. at 7. But, likely due to the well-settled law on the topic, Liburdi's motion argues only that he has standing to contest his "email and message

communications," *see id*. at 3–7, which the government does not dispute, Resp. at 12–15. *See, e.g., United States v. Davis*, 109 F.4th 1320, 1329 (11th Cir. 2024) ("The background presumption in our law is that the government may access voluntarily disclosed electronic data . . . without implicating an individual's privacy interest."); *Trader,* 981 F.3d at 968 (no expectation of privacy in "email address and internet protocol addresses") (collecting cases); *Rehberg*, 611 F.3d at 843 (no interest in phone and fax numbers). In his reply, Liburdi changes course and explicitly asserts "standing for both 'Non-Content' and content-based information." Reply at 2. Though the question is far from settled, Liburdi likely did have an interest in the *content* of his private communications.[4] *See United States v. Ambrose*, No. 23-CR-13-KKM-CPT, 2025 WL 3153495, at \*4 (M.D. Fla. Nov. 12, 2025); *Zelaya-Veliz*, 94 F.4th at 334 ("[P]rivate electronic communications are generally protected by the Fourth Amendment, even when transmitted over third-party platforms."). I proceed on that assumption.

Whether Liburdi had a privacy interest in the "non-content" data sought in the warrant is a different question. This would include data such as "subscriber information," "registration IP address," and "metadata . . . associated with session times and durations." Resp. at 13.

---

[4] Because I assume that Liburdi has standing, I do not address whether this tentative conclusion applies to Liburdi's communications with Microsoft, a third-party.

13

Liburdi does not provide any argument for why the non-content information specifically should receive protection. Instead, he generally asserts a privacy interest in all information because "the accounts at issue were his" and the fact that he "stored the seized information . . . with a third-party" does not extinguish his privacy right. *See* Reply at 2–3.

The government argues that Liburdi had no such interest, and I agree. *See Davis*, 109 F.4th at 1329. Liburdi does not attempt to distinguish his case from the settled precedent on the topic. But even if he did, the Court would still deny the motion because the officers relied on the warrant in good faith. Accordingly, I assume for purposes of resolving this motion that Liburdi has standing to contest the entire warrant.

### B. Probable Cause

Liburdi contends that the warrant was not supported by probable cause because the information was stale and insufficient. Both arguments fail.

### i.    Staleness

Liburdi argues that the warrant lacked probable cause due to the age of the evidence, the failure to show the conspiracy was ongoing, and the possibility that Liburdi had deleted his Skype account by the time the warrant issued. Mot. at 10–14. In response, the government disputes that the nine-month period between warrants rendered the evidence stale. Resp. at 10–11.

14

Moreover, the warrant did not allege that the conspiracy had ended, and even if it had, there was reason to believe that Microsoft still retained relevant data. *See id.* at 11 ("The agents speak at length about their knowledge of" Microsoft's "retention of electronic data associated with their subscriber accounts.").

"To satisfy the probable cause standard, the government must reveal facts that make it likely that the items being sought are in that place when the warrant issues." *United States v. Harris*, 20 F.3d 445, 450 (11th Cir. 1994) (citation modified). In other words, the warrant cannot rely on stale information. *See Lopez*, 649 F.3d at 1246. "Courts consider the length of time as well as the nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched." *United States v. Touset*, 890 F.3d 1227, 1238 (11th Cir. 2018) (citation modified).

The nature of the suspected crimes and the items sought are dispositive here. The agent alleged a complex fraud scheme that spanned years, beginning at least in 2017 and ending somewhere between 2022 and 2024.[5] *See* Macy Aff. ¶ 29 (explaining that Liburdi's conversations with Cooperator A ranged from at least July 2017 to May 2022); *id.* ¶ 36 (describing a June 5, 2023 warrant

---

[5] The Indictment alleges that the scheme continued until "in or around May 8, 2023." Doc. 1 at 7, 10. However, the warrant did not allege a 2023 end date, *see generally* Warrant; *see also* Resp. at 11.

that produced conversations about the scheme). Thus, a nine-month gap alone does not render evidence stale. This is particularly true of the electronic sort of communications at issue here. *See United States v. Holland*, 2023 WL 7321612, at *4 (11th Cir. Nov. 7, 2023) (per curiam) (explaining that when "material is stored electronically, it does not spoil or get consumed like other evidence and can remain on a device after deletion" (citing *Touset*, 890 F.3d at 1237–38)).

Liburdi's alternative arguments require so many assumptions that they fail to present "a common sense and realistic interpretation" of the affidavit. *See Khanani*, 502 F.3d at 1290 (citation modified). For example, Liburdi insists that the agents who sought the warrant thought the conspiracy had ended. *See* Mot. at 10. Under his theory, because Liburdi might have known he was under investigation, there was "a significant likelihood that Liburdi could have possibly deleted the digital information sought." *Id.* at 12. And if Liburdi deleted the data, then Microsoft would not been able to retrieve it, per its user agreement. *See id.* at 13 (explaining that Microsoft only retains information for up to 180 days after a user deletes his account).

In other words, Liburdi asks this Court to assume (1) that agents assumed that Liburdi deleted his Skype account or relevant communications in it, (2) that the agents were aware of Microsoft's retention policies, and (3)

that the agents assumed there was no possibility that Microsoft retained Liburdi's information. *Id.* at 10–13. In the light of the nature of technology and the requested contingencies, this argument is implausible. Accordingly, suppression is not warranted on the ground of staleness.

## ii.    Sufficiency

Next, Liburdi argues that the warrant lacked probable cause because Agent Macy overly relied on his training and experience to support his conclusion that the search would yield evidence of the crimes. Mot. at 15–18. To the contrary, the warrant affidavit was well-sourced. In addition to the experience of an agent who had formally studied and investigated tax fraud, the affidavit featured information from a fellow co-conspirator and an "incriminating chain of messages that tethered [Liburdi's Skype account] to the larger conspiracy." *See Zelaya-Veliz*, 94 F.4th at 336.

Liburdi takes issue with the warrant's failure to narrow all required data, such as IP address logs,[6] to those related to communications. *See* Mot. at 16–17. As explained above, Liburdi does not have a privacy interest in any

---

[6] "An IP address (Internet Protocol address) is a unique series of numbers that identifies a computer participating in a computer network. While some IP addresses are static, that is they are repeatedly used by the same computer, often IP addresses are dynamic, that is a different number is assigned to a computer each time it is used." *United States v. Rubinstein*, No. 09-20611-CR-GOLD, 2010 WL 2723186, at *4 n.8 (S.D. Fla. June 24, 2010), *report and recommendation adopted,* No. 09-20611-CR-GOLD, 2010 WL 2681364 (S.D. Fla. July 7, 2010).

17

information sought *except* the contents of communications. *See, e.g.*, *United States v. Brillhart*, No. 2:22-CR-53-SPC-NPM, 2023 WL 3304278, at *6 (M.D. Fla. May 7, 2023) ("[I]t is well established that law enforcement need not get a search warrant to investigate an IP address."). But even if he did, Liburdi does not explain why the nexus between criminal activity and Skype data dissolves the moment the data does not relate directly to communication. *See* Mot. at 16–17. Under Liburdi's logic, the government might have probable cause to obtain the IP address of Liburdi's computer at the exact time he sent a message, but not an hour before or after. Liburdi cites no authority for such a narrow nexus. In any event, his objection more squarely concerns the *scope* of the warrant rather than probable cause. The magistrate judge's determination of probable cause was "a practical, common-sense decision" based on "all the circumstances set forth in the affidavit." *See Bradley*, 644 F.3d at 1263 (quoting *Gates,* 462 U.S. at 238). The lack of probable cause argument fails.

### C. Particularity

Liburdi argues that the warrant was impermissibly overbroad because it failed to impose subject-matter and temporal limitations on the data produced and a subject-matter limitation on the data seized. Mot. at 18–22. I disagree. The warrant sufficiently limited subject matter. While the government did not explicitly include a temporal limitation,  the affidavit

18

clarified that Liburdi's Skype account was created close in time to other evidence related to the conspiracy. Accordingly, the warrant issued was reasonably narrowed in time.

" '[T]here are generally two types of limitations that can particularize [ ] a warrant' authorizing a search of someone's digital account." *Gyetvay*, 149 F.4th at 1233 (quoting *McCall*, 84 F.4th at 1327). The first "narrow[s] the search based on the subject matter of the data." *McCall*, 84 F.4th at 1327. For example, a warrant might only require the production of conversations between suspected co-conspirators, *id.*, or information related to particular topics, *see Gyetvay*, 149 F.4th at 1233–34; *Blake*, 868 F.3d at 966 (limitation on emails based on sender, recipient, and subject matter).

The second, "preferred" narrowing device limits the production based on time. *McCall*, 84 F.4th at 1328. "By narrowing a search to the data created or uploaded during a relevant time connected to the crime being investigated, officers can particularize their searches to avoid general rummaging." *Id*. Even if the warrant does not include a time limit, the Fourth Amendment may be satisfied when the actual data produced corresponds to a reasonable time-range. *See id.* (upholding a warrant to search an iCloud account when "[a]ny temporal limitation that satisfied the particularity requirement likely would have covered" the time range of data actually produced).

19

A warrant can impose temporal and subject-matter limitations at different points in an investigation. For example, when the government requires digital information from a private party, a warrant might impose a front-end limitation that narrows the scope of the required production. *See Blake*, 868 F.3d at 973 (describing a warrant that "limited the emails to be turned over to the government, ensuring that only those that had the potential to contain incriminating evidence would be disclosed"). Or a warrant might impose a "back-end" limitation, such as by limiting how or what agents may review after they receive the data. *See Gyetvay*, 149 F.4th at 1230, 1233. Finally, a warrant might limit what agents can "seize" among what they review, though, to be clear, what qualifies as a "search" or a "seizure" in the digital context is not settled.[7]

In the instant case, the warrant did not impose an explicit front-end limitation on Microsoft's production of data, but the accompanying affidavit

---

[7] Orin Kerr notes that traditionally, "[t]he government seizes property when it 'meaningfully interferes' with a person's 'possessory interest.'" *The Digital Fourth Amendment: Privacy and Policing in Our Online World* 38 (2025). How this applies in the digital realm where investigators can copy data without "tak[ing] away possession of the original" is less clear. *See id.* Notwithstanding this uncertainty—and despite Liburdi's insistence to the contrary—the Eleventh Circuit does *not* treat the mere receipt of data from a technology company through a valid warrant as a seizure. *See* Mot. at 21 n.4; *cf. McCall*, 84 F.4th at 1328 (describing limitations on a production as a limitation on "a search").

clarified the scope.  The warrant did impose clear back-end limitations on the government's review. I start with the former.

Looking at the warrant and its attachments alone, the required production "encompassed most of the account's conceivable data." *McCall*, 84 F.4th at 1328. It included, among other categories, "all messages associated with the account," and "[a]ll records or other information stored by an individual using the account." Warrant at 5–7. There was no time limitation in this section, which, standing alone "impliedly authorized the government to search all account data disclosed by [Microsoft] from the time since the account['s] . . . creation until the time that the warrant was sworn out." *See Zelaya-Veliz*, 94 F.4th at 328. But the affidavit supporting the application for the warrant provides the ready reason for the lack of a front-end date: Liburdi's Microsoft account was created in August 2016, Macy Aff. ¶ 26, and quoted conversations related to the conspiracy from as early as July 2017, *id.* ¶ 29. Thus, probable cause existed to search the entire Skype account based on the evidence of the conspiracy as known at that time.

In contrast, the section titled "Information to be Seized by the Government" was narrower on its face. Warrant at 7–8. The government could only "seize" information that was "fruits, evidence, or instrumentalities of" bank fraud, conspiracy to commit money laundering by Liburdi or his co-

21

conspirators. *Id.* at 7. The data seized had to come from the time period beginning May 2018, through the date the warrant was issued. *Id.*

In sum, the warrant imposed an implicit temporal limitation, but no subject-matter limitation on the front-end production. It imposed explicit temporal and subject-matter limitations on the back-end review. Liburdi argues that both were insufficient. He is incorrect on both fronts. I first address the back-end review.

Liburdi insists that the warrant's back-end limitations were insufficient because the warrant failed to narrow subject matter. Specifically, he argues that the warrant permitted the government to seize "**all** digital records regardless of whether they were personal, irrelevant, or privileged, from Liburdi's Skype account." Mot. at 21. Not so. As explained above, the information subject to "seizure" was limited to evidence of the specific crimes under investigation. *See* Warrant at 7. Thus, the warrant did not reach the level of vagueness that qualifies for overbreadth, especially given that agents were limited to a time-range that corresponded to the understood dates of the conspiracy. *See id*; *see Gyetvay*, 149 F.4th at 1233–35 (combined subject-matter and temporal limitations sufficiently narrowed review in a tax fraud investigation). "[W]e do not suppress evidence on overbreadth grounds if the warrant adequately conveys its parameters." *Id.* at 1234 (citation modified).

22

"[T]he particularity requirement is a pragmatic one" and thus "the degree of specificity required when describing the goods to be seized may necessarily vary according to the circumstances and type of items involved." *Zelaya-Veliz*, 94 F.4th at 337 (citation modified).

As to the scope of the production, Liburdi argues that the warrant was impermissibly overbroad because it failed to impose subject-matter and temporal limitations. On subject matter, Liburdi objects that the warrant required the production of "all" of the data in various categories. Mot. at 20–21 ("the warrant demanded, '**All** files, documents, communications, images, videos, contacts, metadata, and logs.'"). Liburdi concludes that "[b]y using those general and all-encompassing commands, the warrant essentially authorized the Government to conduct a clearly prohibited general, sweeping, rummaging search." *Id.* at 21. The government responds that it had no "reasonable alternative" because it cannot expect service providers " 'to cull the e-mails and related records in order to find evidence that is relevant to the government's investigation.' " Resp. at 7 (quoting *In re Search of Information associated with [redacted]@mac.com*, 13 F. Supp. 3d 157, 165–166 (D.D.C. 2014)).

While Liburdi is correct that the warrant did not impose subject-matter limitations on the front-end production, his conclusion is wrong. Though the warrant required nearly all conceivable records related to Liburdi's Skype

23

account, the government has the better argument on subject matter. The failure to specify subject-matter limitations in a production does not, per se, invalidate a warrant. *See McCall*, 84 F.4th at 1327. And "[a]s a practical matter, it will often be impossible to separate relevant files or documents before the search takes place, because officers cannot readily anticipate how a suspect will store information related to the charged crimes." *Id.* (citation modified).

Finally, Liburdi argues that the warrant was overbroad because it failed to impose a temporal limitation on the production. The Eleventh Circuit has advised that "in the mine run of cases . . . a time-based limitation" "*before* conducting a search" is "both practical and protective of privacy interests." *See McCall*, 84 F.4th at 1328 (emphasis added). The government counters that "when agents obtained the warrant, they did not know the precise date in which the alleged conspiracy began, only that it had begun on or before May 23, 2018." Resp. at 9. That is fair, and courts permit "a practical margin of flexibility" especially "in complex fraud cases" where "the need for evidence is greater." *Bradley*, 644 F.3d at 1259 (citation modified). But not knowing the precise start date is not a license to give no date at all. Indeed, the government had enough certainty about dates to limit the permitted "seizure" to the period between May 2018 and the date of the warrant's issuance. *See* Warrant at 7.

24

The government offers no explanation for why it could not impose an explicit limitation on the front-end.

The government also invokes cases, largely in the computer context, that permitted agents to take an entire "container" of data and review the evidence later. *See* Resp. at 3–7. The government is correct that courts usually uphold the taking, if necessary, of an entire computer. *See Blake*, 868 F.3d at 973–74 ("Hard drive searches require time-consuming electronic forensic investigation with special equipment, and conducting that kind of search in the defendant's home would be impractical, if not impossible."); *see also* Kerr, *The Digital Fourth Amendment* at 75–76, 134. But cloud data is different. "[T]he government need only send a request with the specific data sought and [Microsoft] will respond with precisely that data." *See Blake*, 868 F.3d at 974. Thus, temporal limitations on the front-end *before starting a search* are usually feasible in the context of cloud data. *See McCall*, 84 F.4th at 1328 (limitation feasible because "data is often created or uploaded at an ascertain-able date and time").

Notwithstanding the above, the warrant was permissible. The affidavit made clear that the Skype account was not created until August 2016, and that the government had evidence of conspiratorial activity as early as July 2017. Macy Aff. ¶¶ 26, 29. Thus, the production *in fact* was limited to a reasonable

25

period of time, which suffices for the Fourth Amendment. *See McCall*, 84 F.4th at 1328. As a result, suppression is not warranted on overbreadth grounds.

### D. Good Faith

However one resolves the above arguments, suppression of the evidence is unwarranted because the "warrant [was not] so facially deficient . . . that the executing officers [could not] reasonably presume it to be valid." *United States v. Morales*, 987 F.3d 966, 974 (11th Cir. 2021).

Liburdi contends that no reasonable officer could have relied upon the warrant because its "ambiguous and broad language" "did not particularize the items to be seized." Mot. at 26. Specifically, Liburdi objects to the "use of the unlimited '**All**', '**any**', and '**other,**'" which, he argues, rendered it impossible for an officer to "ascertain[] the scope and parameters of the warrant." *Id.*

Whether the warrant was overbroad or not, its validity was far from "an open and shut matter." *See Blake*, 868 F.3d at 975. The agents here "act[ed] pursuant to a warrant" issued by a magistrate judge. *McCall*, 84 F.4th at 1323. Ordinarily, "'an officer cannot be expected to question' a judge's decision that the requirements for a warrant have been satisfied or that the form of the warrant is sufficient." *Id.* (quoting *Leon*, 468 U.S. at 908). And the agents "reasonably could have believed that the" temporal and subject-matter limitations in the seizure portion of the warrant "fell within the practical

margin of flexibility for [their] broad investigative task." *Id.* at 1328. "In all but the most unusual circumstances, it is objectively reasonable for a law enforcement officer to rely on a court order." *United States v. Stowers*, 32 F.4th 1054, 1067 (11th Cir. 2022).

This is not an "unusual circumstance," especially in the light of emerging technology. In *McCall*, for example, the good faith exception prevented suppression of evidence from the search of an entire iCloud account. *See* 84 F.4th at 1328. The court advised judges to proceed with caution as "technology moves quickly, the law moves slowly, and the combination can leave law enforcement officers with little insight on how to investigate a cloud account." *Id.* at 1324. I heed the court's advice. The good faith exception bars the suppression of the evidence in this case.

### E. Execution

Liburdi argues that even if the Court finds the warrant constitutional, it should nonetheless suppress the evidence because the execution of the warrant was excessive and thus unreasonable. *See* Mot. at 22–23. Courts look to the totality of the circumstances to determine whether a search was reasonable. Considerations include the warrant's scope, the conditions of the search, the agents' behavior, and "the nature of the evidence being sought." *Schandl*, 947 F.2d at 465. When a warrant is valid, only "flagrant disregard of [its] terms"

27

renders evidence inadmissible at trial. *Khanani*, 502 F.3d at 1289 (citation modified).

Liburdi presents two arguments, the first of which is moot. At the time of filing the motion, the government had not given Liburdi the warrant "return" that lists the items seized. Mot. at 23. Without the return, Liburdi "[could] only assume . . . that the warrant was executed in a manner in excess of its authority." *Id.* at 23–24. Liburdi cites no authority for this assumption. In any event, the government has since provided the warrant return, rendering the argument moot.[8]

Liburdi next argues that execution was unreasonable because the government "failed to ensure there was any minimization protocol in place to protect Liburdi's Fourth Amendment privacy rights and ensure that the information seized was within the scope of the warrant." *Id.* at 25. Indeed, the government represented that it had no formal taint or filter team protocol related to the warrant. (Doc. 191). Of course, the Eleventh Circuit has made clear that there is no blanket requirement for the government to have a minimization protocol to search and seize electronic files. *See Bradley*, 644 F.3d at 1258 n.95 (rejecting the argument that the lack of a protocol per se violated

---

[8] During a hearing on December 11, 2025, counsel for Liburdi and the prosecution represented to the Court that the government provided Liburdi with the warrant return.

the Fourth Amendment); *see also Khanani*, 502 F.3d at 1290–91 (same). Most importantly, Liburdi offers no evidence that agents acted outside the warrant's scope. To the contrary, the government insists that agents intentionally reviewed the files "to determine what fell *within the scope of the warrant.*" Resp. at 16 (emphasis added). To the extent that Liburdi implies that the government's continued retention of the data is improper, his argument is unripe, and he fails to cite any caselaw that the government violates the Fourth Amendment by retaining legally seized property before trial. *See* FED. R. CRIM. P. 41 advisory committee's note to the 2009 amendment (declining "to arbitrarily set a presumptive time period for" the government to accomplish "the return of the storage media or access to the electronically stored information"); *cf. Case v. Eslinger*, 555 F.3d 1317, 1330 (11th Cir. 2009).

Thus, Liburdi fails to show a "flagrant disregard" for the Fourth Amendment justifying suppression.

## IV.   CONCLUSION

The search and seizure of Liburdi's Microsoft account did not violate Liburdi's Fourth Amendment rights. The warrant was not overbroad, but even if it were, the agents reasonably relied in good faith on its validity.

29

Accordingly, the following is **ORDERED**:

1.    Liburdi's Motion to Quash and to Suppress (Doc. 140) is **DENIED**.

2.    Liburdi's Motion for a Hearing (Doc. 141) is **DENIED AS MOOT**.

**ORDERED** in Tampa, Florida, on February 10, 2026.


_Kathryn Kimball Mizelle_
Kathryn Kimball Mizelle
United States District Judge